IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LA'KETRA WASHINGTON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>SKECHERS USA, INC., and )<br>DANIEL SIEGEL, )<br>)<br>Defendants. )<br>_____ ) | CIVIL ACTION<br>NO. _____ |

## DEFENDANTS SKECHERS USA, INC. AND DANIEL SIEGEL'S NOTICE OF REMOVAL

COME NOW Defendants Skechers USA, Inc. and Daniel Siegel (collectively, the "Defendants"), pursuant to 28 U.S.C. §§ 1441 and 1446, and hereby give notice of the removal of the civil action known as *La'Ketra Washington v. Skechers USA, Inc. and Daniel Siegel*, Civil Action No. 18A70097, from the State Court of DeKalb County, State of Georgia (the "State Court Action"), to the United States District Court for the Northern District of Georgia, Atlanta Division.

In support thereof, the Defendants show the Court as follows:

## BACKGROUND

1. Plaintiff La'Ketra Washington ("Plaintiff") filed the State Court Action on July 5, 2018, naming Skechers USA, Inc. ("Skechers") and Daniel Siegel ("Siegel") as Defendants. True and correct copies of all process, pleadings, and orders received by Skechers and Siegel in the State Court Action[1] are attached hereto as Exhibit A.

2. The summons and a copy of the complaint from the State Court Action were served on Siegel on July 6, 2018, and on Skechers on July 10, 2018.

3. This notice of removal is filed within 30 days after receipt by the Defendants, through service or otherwise, of the complaint setting forth the claims for relief upon which this action is based, and, therefore, it is timely under the provisions of 28 U.S.C. § 1446(b).

---

[1] The State Court Action was refiled pursuant to Georgia's renewal statute, which permits a plaintiff to dismiss and recommence a suit within the original applicable period of limitation or within six months after the dismissal, whichever is later. O.C.G.A. § 9–2–61(a). Plaintiff's action was first filed in DeKalb County State Court on March 12, 2018, against Defendant Skechers only. *See La'Ketra Washington v. Skechers USA, Inc.*, Civil Action No. 18A68441-7. Skechers removed the case to this Court on April 12, 2018. *See La'Ketra Washington v. Skechers USA, Inc.*, Docket No. 1:18-CV-01561-MLB. Plaintiff voluntarily dismissed the action on April 15, 2018. *See* Docket No. 1:18-CV-01561, Doc. 5.

## THE PARTIES

4. Upon information and belief, Plaintiff is a citizen of the State of Georgia.

5. Defendant Siegel is a citizen of the State of Georgia.

6. Defendant Skechers was, at the time of the commencement of this action and has been at all times thereafter, through and including the present time, a Delaware corporation with its principal place of business in the State of California.

## GROUNDS FOR REMOVAL

7. The above-described action is a civil action over which this Court has original jurisdiction under the provisions of 28 U.S.C. § 1332. This action is also one that may be removed to this Court by the Defendants, pursuant to the provisions of 28 U.S.C. §§ 1441 and 1446, because the amount in controversy exceeds $75,000 and the parties that are properly joined are citizens of different states.

**(a)   The amount in controversy for this action exceeds $75,000.**

8. This is a defamation case that arises from Plaintiff's March 2017 termination from Skechers. (Compl. at ¶¶ 7-8, 24.) Plaintiff, a former multi-store manager at Skechers locations in DeKalb County and Fulton County, Georgia,

alleges that Skechers falsely accused her of committing theft against the company. (Compl. at ¶¶ 1, 26-38, 40, 46, 52-53.)

9. Although Plaintiff's prayer for relief does not demand a specific amount, both the face of the Complaint and information outside of the Complaint demonstrate by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See Hardwick v. Fed. Nat'l Mortg. Ass'n*, No. 1:12-CV-4247-CAP, 2013 WL 12109766, at *2 (N.D. Ga. May 6, 2013) (citing *Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir. 2002)) ("Should the plaintiff seek an unnamed amount of relief in the complaint, 'a defendant seeking removal based on diversity jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional requirement.'"). To make this determination, district courts can make "reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1066 (11th Cir. 2010).

10. Plaintiff seeks a monetary award that includes: compensatory damages, Compl. ¶¶ 44, 50, 55, 58, 62; punitive damages, Compl. ¶¶ 44, 50, 55, 58, 62, 65-67; reasonable attorneys' fees and expenses, Compl. ¶¶ 44, 50, 55, 58, 62, 63-64; and all other fees and costs associated with this action, Compl. at 14. The number and nature of damage types sought by Plaintiff demonstrate that the amount in

controversy in this case more likely than not exceeds the $75,000 jurisdictional threshold.

11. Additionally, on January 16, 2018, Plaintiff (through counsel) submitted a settlement demand to Skechers in the amount of $130,200 to settle "civil claims of defamation and race discrimination (and any other claims [Plaintiff] may have to date) for payment of lost wages, harm to reputation, emotional distress, and attorneys' fees." The settlement demand further stated that the award would be allocated as follows: 40% to attorneys' fees ($52,080); 40% to reputational/emotional distress damages ($52,080); and 20% to lost wages ($26,040). Even if attorneys' fees are excluded from the calculation, Plaintiff's settlement demand contemplates damages of $78,120. This settlement demand is sufficient to establish the amount in controversy as of the time of removal. *See Mikesell v. FIA Card Servs., N.A.*, 936 F. Supp. 2d 1327, 1331 (M.D. Fla. 2013) (citing *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) ("A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later.").

**(b) Complete diversity of citizenship exists between Plaintiff and Defendant Skechers, which has been properly joined in this action.**

12. As set forth above, Plaintiff is a citizen of Georgia, and Skechers is a citizen of California and Delaware. Consequently, complete diversity of citizenship exists between Plaintiff and Skechers.

**(c) The Court should disregard Siegel's Georgia citizenship for its diversity analysis because he has not been properly joined in this action.**

13. Although Siegel and Plaintiff are not diverse because they are both Georgia citizens, the Court need not consider Siegel's citizenship for its diversity analysis because he has been fraudulently joined in this action.

14. Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity, as provided in 28 U.S.C. § 1441(a). *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir. 1998). To establish that a party has been fraudulently joined, the removing party must show: 1) Plaintiff cannot prove a cause of action against the resident (non-diverse) defendant; 2) when there is outright fraud in Plaintiff's pleading regarding jurisdictional facts; or 3) where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the

non-diverse defendant. *See id.* If fraudulent joinder is established, then the resident defendant is subject to dismissal as a party and its citizenship is disregarded for diversity requirement purposes. *See id.*

15. The removing party must prove by clear and convincing evidence that the resident defendant was fraudulently joined. *Manley v. Ford Motor Co.*, 17 F. Supp. 3d 1375, 1381 (N.D. Ga. 2014) (citing *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011)). In determining whether a party has been fraudulently joined, federal courts are not to weigh the merits of the plaintiff's claim, but to determine whether the claim is an arguable one under state law. *Smith v. Willis Ins. Services of Georgia, Inc.,* No. 1:11-CV-756-TWT, 2011 WL 2749556, at *1 (N.D. Ga. Jul. 13, 2011). In doing so, a court may consider evidence outside of the pleadings, including affidavits and deposition testimony. *See, e.g., Smith*, 2011 WL 2749556, at *2; *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *Legg v. Wyeth,* 428 F.3d 1317, 1321 (11th Cir. 2005). In evaluating this evidence, this Court must consider all factual allegations and controlling law in the light most favorable to the non-moving party. *Crowe*, 113 F.3d at 1538.

16. Plaintiff alleges against Siegel claims of slander, libel, false and malicious prosecution, and intentional infliction of emotional distress. Plaintiff cannot prove any of her causes of action against Siegel because: (a) Plaintiff's claims

of slander and libel are barred by Georgia's statute of limitations and otherwise fail as a matter of law; (b) Siegel did not instigate the criminal proceedings that form the basis of Plaintiff's malicious prosecution claim; and (c) Plaintiff's emotional distress claim fails because it is predicated on the meritless defamation and malicious prosecution claims.

> *(i)   Plaintiff's defamation claims against Siegel are either time-barred or fail as a matter of law.*

17.   Plaintiff cannot prevail on her claims of slander and libel against Siegel because they are barred by Georgia's statute of limitations and otherwise fail as a matter of law.

### Siegel's March 2017 Statements

18.   In Georgia, under O.C.G.A. § 9-3-33, a party has one year from the date that the defamatory statement is uttered or published to bring suit. *See McGee v. Gast*, 257 Ga. App. 882, 883–84 (2002). Additionally, there are special statute of limitations considerations for cases refiled pursuant to Georgia's renewal statute, O.C.G.A. § 9–2–61(a). If the statute of limitation has not run, the plaintiff may add new parties and new claims to the refiled action; however, if the statute of limitations has expired, the plaintiff is limited to suing the same defendants under the same theories of recovery. *Auto-Owners Ins. Co. v. Hale Haven Properties, LLC*, No. A18A0132, 2018 WL 2454994, at *3 (Ga. Ct. App. Jun. 1, 2018) (citing *Ward v.*

*Dodson*, 256 Ga. App. 660, 661 (2002)). The renewal statute may not be used to suspend the running of the statute of limitation as to defendants different from those originally sued. *Id.*

19. Because Plaintiff resurrected the State Court Action using Georgia's renewal statute, she cannot add Siegel to this case as a new defendant for time-barred defamation claims. Plaintiff's Complaint alleges that the majority of Siegel's defamatory statements occurred on: (1) March 21, 2017, the day she was terminated, Compl. ¶¶ 7-8, 25; (2) March 22, 2017, the day Matthew Yount ("Yount"), East Coast Regional Loss Prevention Manager of Skechers, reported her theft to law enforcement, Compl. ¶¶ 26-30; and/or (3) "[j]ust a few days following" her March 21, 2017 termination, Compl. ¶ 32.[2]

20. Even under a liberal interpretation of the latest date on which Siegel's statements could have occurred – "just a few days" after March 21, 2017 – the statute of limitations would have expired well before the State Court Action was filed on July 5, 2018. Because Plaintiff is time-barred from bringing her slander and libel claims against Siegel for the statements described above, the claims must fail.

---

[2] Although not explicitly stated in the Complaint, Plaintiff's criminal trial began in DeKalb County State Court on March 29, 2018, and ended on March 30, 2018. *See State v. La'Ketra Washington*, Criminal Action Nos. 17C05513 (original accusation), 17C0551-6 (amended accusation).

9

Siegel's Statements at Trial

21. To the extent that Plaintiff's defamation claims against Siegel are based on allegedly false statements that Siegel made during the state criminal trial, Compl. ¶¶ 34, 37, these statements cannot form the basis for relief. Georgia law makes clear that defamatory statements made in court by a witness that are responsive to a question posed by the trial court or counsel are afforded an absolute privilege from defamation lawsuits. *Renton v. Watson*, 319 Ga. App. 896, 900–01 (2013) (citations omitted); *see also* O.C.G.A § 51–5–8. Thus, Plaintiff's claims fail as a matter of law.

> (ii)  Plaintiff cannot show Siegel instigated the criminal proceedings underlying the malicious prosecution claim.

22. Even with all facts viewed in her favor, Plaintiff's allegations are insufficient to show that Siegel instigated the Dunwoody Policy Department's investigation and the resulting DeKalb County prosecution. For Plaintiff to assert a claim of false and malicious prosecution, she needs to establish: 1) there was a prosecution for a criminal offense instigated by the defendant; 2) issuance of a valid warrant, accusation, indictment, or summons; 3) termination of the prosecution in favor of plaintiff; 4) malice; 5) want of probable cause; and 6) damage to the plaintiff. *Everett v. Cobb County, Georgia,* No. 1:17-CV-3392, 2018 WL 2219435, at *2 (N.D. Ga. May 15, 2018). Although a person may be held liable for unduly

influencing the decision to prosecute by providing information that is known to be false, misleading[,] or materially incomplete, the central question is whether the officials involved made an independent decision to arrest or prosecute. *Harris v. Wal-Mart Stores E., LP*, No. 1:11-CV-03406, 2013 WL 6795973, at *7 (N.D. Ga. Dec. 23, 2013) (citations omitted).

23. First, Plaintiff does not allege that Siegel led the internal investigation against her; instead, she makes clear that Loss Prevention has primary responsibility for investigating employee theft. Compl. ¶¶ 6-8. In fact, it was Loss Prevention Manager Yount who reported Plaintiff's theft to law enforcement – not Siegel. Compl. ¶¶ 26-30. Although Plaintiff states that Yount reported Plaintiff to law enforcement with the "support and assistance of Siegel," Compl. ¶ 29, the underlying police report makes clear that Yount was the only person that reported this matter to authorities. *See* Dunwoody Incident/Investigation Report, attached hereto as <u>Exhibit B</u> at 1.

24. Second, Siegel's alleged false statements did not unduly influence the decision by law enforcement to pursue prosecution. This point is best proven by comparing Plaintiff's own Complaint with the Dunwoody police report. Plaintiff states that, during the interview preceding her termination, Yount told her that it was against company policy to purchase merchandise online and return it in-store to

11

receive an employee discount. Compl. ¶ 19. Plaintiff responded that she was not aware of any such policy and that Siegel was aware of her actions. Compl. ¶ 21. Conspicuously, Plaintiff does not state whether, at the time of the interview, Siegel was aware that she received commissions for her online purchases, *see* Compl. ¶¶ 21-22, and she does not state whether Siegel told Yount that doing so violated company policy, *see* Compl. ¶ 25. Plaintiff does, however, state that Siegel denied at trial that he had knowledge of and approved Plaintiff's commission transactions. Compl. ¶ 37.

25. Even if Siegel falsely relayed this information to Yount, this information did not form the basis of the Dunwoody Police Department's decision to prosecute Plaintiff. None of this "false" information appears on the face of the Dunwoody police report. *See* Exhibit B at 2-5. In fact, the police report takes into account Plaintiff's own version of events, as shared with Yount during her interview: "[ ] Ms. Washington is entitled to make a purchase from the store's online system, and she is not violating any laws by returning the merchandise and then applying her provided discount[.]" Exhibit B at 4. The gravamen of Plaintiff's theft by deception prosecution was not that she *received* commissions, but that she improperly *retained* commissions. Both the police report and the Complaint explain that Plaintiff used her employee code (31768) to purchase merchandise, thus allowing her to earn

commission on the sale. Compl. ¶ 28; Exhibit B at 3-4. But, when making a return, Plaintiff used a generic sales person code (9999) to ensure that she did not lose the commission on the returned merchandise. Compl. ¶ 28; Exhibit B at 3-4. As described in the police report, Plaintiff was "conducting these transactions in a way that gives to her a commission that is not being returned. She is conducting these transactions for profit." Exhibit B at 4. Thus, any false information that Siegel may have relayed to Yount (or, by extension, law enforcement) was of no consequence to their decision to prosecute.

> (iii) *Plaintiff cannot prove her intentional infliction of emotional distress claim against Siegel because it is predicated on her meritless defamation and malicious prosecution claims.*

26. Plaintiff's emotional distress claim is predicated on her defamation and malicious prosecution claims. Compl. ¶¶ 57-58. Because these predicate claims fail for the reasons stated above, they cannot serve as the basis for her emotional distress claim. *See Desmond v. Troncalli Mitsubishi*, 243 Ga. App. 71, 75 (2000) (upholding trial court's order to dismiss plaintiff's intentional infliction of emotional distress claim because it was predicated on meritless false arrest and malicious prosecution claims). Thus, Plaintiff's emotional distress claim against Siegel must fail.

13

## CONCLUSION

27. Given that the Court has original jurisdiction as shown above, removal of this action is proper under 28 U.S.C. § 1446 because:

(a) this Notice of Removal is being filed within thirty (30) days of the Defendants' receipt (through service or otherwise) of the Complaint;

(b) this Notice of Removal is being filed within one (1) year of the date of commencement of the action for removal purposes;

(c) Defendant Skechers has been properly joined and served, and has joined in the removal of this action;

(d) Defendant Siegel has been fraudulently joined because Plaintiff cannot prove a cause of action against him; and

(e) Neither Defendant Skechers nor Defendant Siegel have previously sought similar relief in this action.

28. Venue for removal of this action to this Court is proper because it is the district court of the United States for the district and division in which the state civil action being removed is pending, within the meaning of 28 U.S.C. § 1441 and § 1446(a).

29. A copy of the Notice of Removal will be contemporaneously filed with the State Court of DeKalb County, Georgia. A copy of the filing with the State Court without exhibits is attached hereto as Exhibit C.

WHEREFORE, Defendants respectfully request that the entire action referred to above proceed in the United States District Court for the Northern District of

Georgia, Atlanta Division, and that no further proceedings be held in said case in the State Court of DeKalb County, Georgia.

Respectfully submitted, this 3rd day of August, 2018.

>*/s/Michelle W. Johnson*
>Michelle W. Johnson
>Georgia Bar No. 759611
>michelle.johnson@nelsonmullins.com
>
>Nekia Hackworth Jones
>Georgia Bar No. 394110
>nekia.hackworth@nelsonmullins.com
>
>**Counsel for Defendants**
>**SKECHERS USA, INC. & DANIEL SIEGEL**

NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street, N.W.
Suite 1700
Atlanta, GA 30363
(404) 322-6000 (Phone)
(404) 322-6050 (Fax)

## CERTIFICATE OF COMPLIANCE & SERVICE

I hereby certify that I have this day prepared the foregoing using Times New Roman, 14 point font, pursuant to Local Rule 5.1C, N.D. Ga.

I also certify that I have this day served the within and foregoing by depositing a copy of same in the United States Mail in a properly addressed envelope with sufficient postage affixed thereto to ensure delivery to the following:

James M. McCabe, Esq.
The McCabe Law Firm, LLC
3355 Lenox Road
Suite 750
Atlanta, GA 30326
Phone: 404-250-3233

*Counsel for Plaintiff La'Ketra Washington*

This 3rd day of August, 2018.

/s/Michelle W. Johnson
Michelle W. Johnson

**Counsel for Defendants SKECHERS USA, INC. & DANIEL SIEGEL**