# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

La'Ketra Washington,

      Plaintiff,   Case No. 1:18-cv-03731

v.          Michael L. Brown
          United States District Judge
Skechers USA, Inc. and Daniel
Siegel,

       Defendants.

_____/

## OPINION & ORDER

Plaintiff La'Ketra Washington moves to remand this action to state court.  (Dkt. 12.)  Defendants Skechers USA, Inc. and Daniel Siegel oppose her motion.  (Dkt. 16.)  Because the Court lacks subject matter jurisdiction, the Court grants Plaintiff's motion.

## I. Background

Plaintiff managed a Skechers store in Atlanta, Georgia.  (Dkt. 1-1 ¶ 1.)  Defendant Siegel was her supervisor.  (*Id.* ¶ 2.)  After an internal investigation, Defendant Skechers fired her for alleged theft of sales commissions.  (*Id.* ¶ 24.)  It also reported her to local police, leading to

her arrest and prosecution. (*Id.* ¶¶ 33–34.) Plaintiff claims that she was "prosecuted based on the false accusations of Skechers and Seigel." (*Id.* ¶ 34.) Plaintiff also alleges that Defendant Siegel (and others) told people outside the company that Skechers fired her for theft and law enforcement was prosecuting her. (*Id.* ¶ 32.) Plaintiff claims that Siegel testified against her at trial and a jury acquitted her of all charges. (*Id.* ¶ 34.)

Plaintiff sued Skechers for libel and slander in the State Court of DeKalb County, Georgia. *See* Complaint, *Washington v. Skechers USA, Inc.*, No. 18A68441 (State Court of DeKalb Cty. Ga. Mar. 12, 2018) (No. 1). Skechers removed that action to federal court based on diversity of citizenship. Notice of Removal with Complaint, *Washington v. Skechers USA, Inc.*, No. 1:18-cv-01561 (N.D. Ga. Apr. 11, 2018), ECF No. 1 ("*Washington I*"). Plaintiff voluntarily dismissed the action five days later. *Washington I*, ECF No. 5.

In July 2018, Plaintiff filed this case, again in state court. (Dkt. 1-1.) This time, Plaintiff named both Skechers and Siegel as defendants. She made no allegations about her or Defendant Siegel's citizenship. Defendants, however, assert that both Plaintiff and Defendant Siegel are

citizens of Georgia. (Dkt. 1 ¶¶ 4–5.) Skechers, however, is a Delaware corporation with its principal place of business in California. (*Id*. ¶ 6.) In August 2018, Defendants removed the action to federal court, asserting that Plaintiff fraudulently joined Defendant Siegel in this action to destroy diversity of citizenship. (*Id*. ¶¶ 13–16.)

In August 2018, Defendants moved to dismiss Plaintiff's complaint for failure to state a claim. (Dkt. 7.) Plaintiff then moved to remand this action to state court and also filed an amended complaint. (Dkts. 12, 13.) The Court stayed Defendants' time for responding to the amended complaint pending its ruling on Plaintiff's motion to remand. (Dkt. 11 at 1–2.)

## II. Legal Standard

Removal from state to federal court is proper if the federal court has original jurisdiction over the action. *See* 28 U.S.C. § 1441. Aside from cases arising out of the Constitution or laws of the United States, district courts have diversity jurisdiction over civil actions between citizens of different states with an amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332(a)(1). Diversity jurisdiction requires complete diversity, meaning "the citizenship of every plaintiff must be diverse from the

citizenship of every defendant." *Legg v. Wyeth*, 428 F.3d 1317, 1320 n.2 (11th Cir. 2005). When a party removes a case on diversity jurisdiction, a federal court must remand the action if there is not complete diversity between the parties. *See Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806)).

A district court should look at the case at the time of removal to determine whether it has subject matter jurisdiction. *See Pintando v. Miami–Dade Hous. Agency*, 501 F.3d 1241, 1244 n.2 (11th Cir. 2007); *see also Leonard v. Enter. Rent A Car*, 279 F.3d 967, 972 (11th Cir. 2002). As a result, this Court assesses jurisdiction at the time of and based on the original complaint, not the amended complaint.

## III. Analysis

Plaintiff claims this Court lacks jurisdiction because both she and Defendant Siegel reside in Georgia. (Dkt. 12 at 1.) Defendants counter that Plaintiff fraudulently joined Defendant Siegel purely to defeat diversity jurisdiction. (Dkt. 16 at 1.)

Under Eleventh Circuit precedent, the removing defendant has the "heavy" burden of establishing fraudulent joinder by clear and convincing

evidence. *See Stillwell*, 663 F.3d at 1332. Fraudulent joinder generally arises when "there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant" or "there is outright fraud in the plaintiff's pleading of jurisdictional facts." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Defendants do not argue the second scenario but concentrate on the first — arguing Plaintiff's allegation against Defendant Siegel cannot state a claim, making his joinder fraudulent.[1]

In considering whether to remand a case, the district court "must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Stillwell*, 663 F.3d at 1333. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to the state court." *Taylor*

---

[1] Joinder may also be fraudulent "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Triggs*, 154 F.3d 1287. Again, Defendants make no such allegation here.

*Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888, 890 (11th Cir. 2011) (citing *Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir. 1997)). Federal courts apply state substantive law when considering cases that arise under their diversity jurisdiction. *See Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1357 (11th Cir. 2014). Georgia law thus applies here.

In making this assessment, the federal court "must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court." *Ullah v. BAC Home Loans Servicing LP*, 538 F. App'x 844, 846 (11th Cir. 2013) (quoting *Stillwell*, 663 F.3d at 1334). "The pleading standard in Georgia is lower than the standard applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Id.* (citing *Stillwell*, 663 F.3d at 1334 n.3.). "Under Georgia law, fair notice of the nature of the claim is all that is required, and the elements of most claims can be pled in general terms." *Id.* (citing *Bush v. Bank of N.Y. Mellon*, 720 S.E.2d 370, 374 (Ga. Ct. App. 2011)). Pleading conclusions, rather than facts, may be enough to state a claim for relief. *See Stillwell*, 663 F.3d at 1334; *see also Ledford v. Meyer*, 290 S.E.2d 908, 909–10 (Ga. 1982) (holding that under the notice

theory of pleading adopted in Georgia "it is immaterial whether a pleading states 'conclusions' or 'facts' as long as fair notice is given").

Georgia courts find a plaintiff has failed to state a claim against a party on which relief can be granted only when "(1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought." *Sherman v. Fulton Cty. Bd. of Assessors*, 701 S.E.2d 472, 474 (Ga. 2010) (internal quotation marks omitted) (quoting *Southstar Energy Serv. v. Ellison*, 691 S.E.2d 203, 204 (Ga. 2010)). Whether Plaintiff fraudulently joined Defendant Siegel thus depends on whether a state court could possibly find that Plaintiff has sufficiently alleged a claim against Defendant Siegel under Georgia's notice-pleading standards. *See Stillwell*, 663 F.3d at 1334–35 ("[I]t is, at the very least, possible that a Georgia state court would conclude that Stillwell's allegations against Edwards satisfied [Georgia's notice-pleading] standard.").

## A.    Libel and slander

Plaintiff asserts claims of slander and libel against Defendant Siegel (and Defendant Skechers).  Defendants argue these claims are barred by Georgia's statute of limitations and fail as a matter of law — thus preventing them from supporting Defendant Siegel's proper joinder.

Under Georgia law, libel, or written defamation, is a false and malicious defamation expressed in print, writing, pictures, or signs that tends to injure the reputation of the person and exposes her to public hatred, contempt, or ridicule.  *See* GA. CODE ANN. § 51-5-1.  A libelous statement is published as soon as one person communicates it to any person other than the party libeled.  § 51-5-3.  Georgia law defines slander, or oral defamation, as (1) imputing to another a crime punishable by law; (2) charging a person with having a contagious disorder or being guilty of a debasing act that may exclude him from society; (3) making charges against another about his trade, office, or profession, calculated to injure him therin; or (4) uttering any disparaging words productive of special damage that flows naturally therefrom.  § 51-5-4.  Under Georgia law, "when the claim alleged is a traditionally disfavored cause of action, such as malicious prosecution,

libel, and slander, the courts tend to construe the complaint by a somewhat stricter standard." *Willis v. United Family Life Ins.*, 487 S.E.2d 376, 379 (Ga. Ct. App. 1997).

Libel and slander claims have a one-year statute of limitations under Georgia law. *See* GA. CODE ANN. § 9-3-33; *see also Lee v. Gore*, 472 S.E.2d 164, 168 (Ga. Ct. App. 1996). A statute of limitations bar is an affirmative defense, and a plaintiff need not negate affirmative defenses in her complaint. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quoting *Tregenza v. Great Am. Comm'rs Co.*, 12 F.3d 717, 718 (7th Cir. 1993)). Thus, for the Court to find there is no possibility Plaintiff can prevail on her defamation claims, the complaint must show that the statute of limitations has run. *See id.* (discussing dismissal under Rule 12(b)(6), rather than Georgia law); *see also Pintando*, 501 F.3d at 1244 n.2.[2]

---

[2] Georgia's renewal statute "permits a plaintiff to dismiss and recommence a suit within the original applicable period of limitation or within six months after the dismissal, whichever is later." *Auto-Owners Ins. Co. v. Hale Haven Props., LLC*, 815 S.E.2d 574, 580 (Ga. Ct. App. 2018) (quoting *Ward v. Dodson*, 569 S.E.2d 554, 556 (Ga. Ct. App. 2002) (citations and punctuation omitted)); *see also* GA. CODE ANN. § 9-2-61(a). "[I]f the statute of limitation has expired, the plaintiff is limited to suing the same defendants under the same theories of recovery." *Auto-Owners*

Plaintiff alleges that Defendants communicated false statements about her and falsely alleged that she committed a crime and violated company policies. (Dkt. 1-1 ¶¶ 40, 46.) Plaintiff does not explicitly state the date on which she claims Defendant Siegel made the statements at issue in Counts I and II. She does, however, allege that Matt Yount, Skechers's East Coast Regional Loss Prevention Manager, and Kate Crumbley, its Regional Employee Relations Manager, interviewed her and terminated her employment in March 2017. (*Id.* ¶¶ 7–8, 24.) She also alleges that Mr. Yount, with Defendant Siegel's support and assistance, reported her alleged acts of theft to the Dunwoody police orally and in writing. (*Id.* ¶¶ 26–29.) Plaintiff alleges that Defendant Siegel told other people the false information that she had been indicted and fired for committing theft a few days after her termination. (*Id.* ¶ 32.) She also alleges that law enforcement prosecuted her based on Defendant Siegel's false accusations, including those he made while

---

*Ins. Co.,* 815 S.E.2d at 580. "The renewal statute may not be used to suspend the running of the statute of limitation as to defendants different from those originally sued." *Id.* Because Plaintiff did not sue Defendant Siegel in the prior litigation, *Washington I,* the renewal statute does not apply to her claims against Defendant Siegel.

testifying during her criminal trial in March 2018.  (Dkts. 1-1 ¶¶ 34, 37; 16-2 at 2.)   Thus, Plaintiff alleged that Defendant Siegel made defamatory statements about her to others around March 2017 (when she was terminated from Skechers and arrested) and in March 2018 (when he testified during her trial).  Georgia law required her to bring any slander or libel claims for this conduct by March 2018 and March 2019 respectively.

Plaintiff filed this complaint on July 5, 2018.  Any slander or libel claims against Defendant Siegel arising from his alleged statements and writings at the time of her termination are thus barred by the statute of limitations.  Any slander claims arising from his alleged statements during her trial, however, are not.

Defendants argue that Defendant Siegel cannot be liable for statements he made during the trial because Georgia law provides an absolute privilege for such testimony.  (Dkt. 16 at 12 (citing *Renton v. Watson*, 739 S.E.2d 19, 24–25 (Ga. Ct. App. 2013); GA. CODE ANN. § 51-5-8).)   Georgia law recognizes two kinds of privileged communications, absolute and conditional.  *See Saye v. Deloitte & Touche, LLP,* 670 S.E.2d 818, 821 (Ga. Ct. App. 2009) (citing GA. CODE ANN. §§ 51-5-7, 51-5-8, 51-

5-9). "[C]ommunications which are afforded an absolute privilege cannot form the basis of a defamation action, regardless of the falsity of the statements or the speaker's malicious intent; conditionally privileged statements, on the other hand, are actionable upon a showing of malice." *Id.*; *see also Wertz v. Allen*, 721 S.E.2d 122, 126 (Ga. Ct. App. 2011).

Under Georgia law, allegations in judicial proceedings are privileged. Such statements cannot spark defamation liability "[h]owever false and malicious such charges, allegations, and averments may be. GA. CODE ANN. § 51-5-8; *see also Stewart v. Walton,* 326 S.E.2d 738, 739 (Ga. 1985). Georgia courts interpreted section 51-5-8 "to include 'official court documents' and acts of 'legal process.'" *Renton*, 739 S.E.2d at 24 (citing *Williams v. Stepler,* 490 S.E.2d 167, 172 (Ga. Ct. App. 1997)). They have also afforded an absolute privilege to testimony made in court in response to questions posed by the trial court or counsel. *See Renton*, 739 S.E.2d at 25; *see also Rivers v. Goodson,* 373 S.E.2d 843, 844 (Ga. Ct. App. 1988) ("Witnesses who testify in judicial proceedings are absolutely privileged against defamation actions arising out of their responsive testimony."); *Gallaher v. Teeple,* 357 S.E.2d 808, 812 (Ga. Ct. App. 1987) ("No actionable liability attaches to a witness for any statement in his

testimony (no matter how false or malicious it may be), unless the witness, without being asked, volunteers a false and malicious defamatory statement which is not pertinent.").

Defendants attached the transcript from Plaintiff's trial as an exhibit to their brief in opposition to Plaintiff's motion to remand.[3] (Dkt. 16-2.) It shows that Defendant Siegel simply answered questions posed to him by the prosecuting attorney and Plaintiff's defense attorney. He never — without being asked — volunteered any information. Plaintiff identifies no unsolicited allegedly defamatory statements he made

_____

[3] Defendants request that the Court take judicial notice of the Dunwoody Police Department's Incident/Investigative Report about Skechers's claims against Plaintiff (Dkt. 16-1) and the transcript from Plaintiff's criminal trial in the State Court of DeKalb County, Georgia (Dkt. 16-2). Courts may take judicial notice of facts not subject to reasonable dispute if those facts can be accurately determined from sources whose accuracy cannot reasonably be questioned. FED. R. EVID. 201(b). State court litigation documents are the type of documents whose accuracy cannot reasonably be questioned and thus are subject to judicial notice. *See U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015) ("Courts may take judicial notice of publicly filed documents, such as those in state court litigation . . . ."). Here, the accuracy of the Dunwoody Police and state court records is not subject to reasonable dispute and Plaintiff has had an opportunity to challenge the propriety of the Court considering these documents in her reply in support of her motion to remand. *See* FED. R. EVID. 201(e). The Court thus takes judicial notice of these records under Rule 201(b) to adjudicate Plaintiff's motion to remand.

during the trial. She simply alleges that he provided false information in court. (Dkt. 1-1 ¶ 34.) Defendant Siegel spoke about Plaintiff during the criminal proceedings in response to questions from counsel. (Dkt. 16-2 at 95–133.) Georgia law provides an absolute privilege for those statements. Plaintiff thus fails to state a claim for slander or libel against Defendant Siegel in her original complaint.

In her amended complaint, however, Plaintiff alleges that following her termination, she learned that Defendant Siegel communicated to other people outside Skechers that the company had terminated her for theft and law enforcement was prosecuting her. (Dkt. 13 ¶ 32.) Specifically, she alleges that in July 2017 a former Skechers employee informed her that Defendant Siegel reported to others that she had committed theft. (*Id*.) Plaintiff's claims based on statements Defendant Siegel made to third parties after July 5, 2017, would not be barred by the statute of limitations. The Court, however, must examine the complaint at the time of removal in its analysis of Plaintiff's motion to remand. Those allegations are not in the original complaint.

The libelous and slanderous statements allegedly made by Defendant Seigel and identified in the original complaint were either

published/made outside the statute of limitations or are absolutely privileged under Georgia law. No Georgia state court could possibly find that Plaintiff's original complaint states claim of slander or libel against Defendant Siegel.

## B. False and malicious prosecution

Plaintiff also sued Defendant Siegel for malicious prosecution. Defendants argue this claim fails because he instigated no criminal proceedings against Plaintiff. (Dkt. 16 at 3.)

"In order to state a claim for malicious prosecution in Georgia, a plaintiff must show '(1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff.'" *Barnette v. Coastal Hematology & Oncology, P.C.*, 670 S.E.2d 217, 220 (Ga. Ct. App. 2008) (quoting *Wal–Mart Stores v. Blackford*, 449 S.E.2d 293, 294 (Ga. 1994)); *see also* GA. CODE ANN. § 51-7-40; *Reid v. Waste Indus. USA, Inc.*, 812 S.E.2d 582, 587 (Ga. Ct. App. 2018). Thus, "[t]he gravamen of the complaint is the absence of probable cause on the part of the person instituting the prosecution." *Barnette*, 670 S.E.2d at 220 (quoting *Wal–*

*Mart Stores*, 449 S.E.2d at 294).  "[M]alice may be inferred where the defendant makes a false statement to police for the purpose of achieving some personal goal, such as revenge or the collection of a debt." *McKissick v. S.O.A., Inc.*, 684 S.E.2d 24, 29 (Ga. Ct. App. 2009).  The Georgia Court of Appeals has explained:

> [T]he law draws a fine line of demarcation between cases where a party directly or indirectly urges a law enforcement official to begin criminal proceedings and cases where a party merely relays facts to an official who then makes an independent decision to arrest or prosecute.  In the former case, there is potential liability for malicious prosecution, whereas in the latter case there is none.  It is clear, though, that initiation of the criminal action need not be expressly directed by the party to be held liable.  A distinction must be drawn, then, between actually instigating or procuring the institution of criminal proceedings, and merely providing information to a law enforcement official without in any way attempting to influence his judgment.  A person may be held liable for malicious prosecution when he provides information to an investigating officer that he knows to be false, and in doing so unduly influences the authorities to take the complained of actions.

*Turnage v. Kasper*, 704 S.E.2d 842, 850–51 (Ga. Ct. App. 2010) (quotation marks and citations omitted).

Plaintiff alleges in her first complaint that Defendants instigated and maintained a criminal action against her without probable cause, with malice, and under a valid warrant.  (Dkt. 1-1 ¶¶ 52–53.)  She alleges

that Defendant Siegel supported and assisted Mr. Yount in reporting allegations about Plaintiff's acts of theft to the Dunwoody police and that Defendants concealed facts, destroyed exculpatory documents, and "failed to make a fair, full, and complete statements of the facts as they existed." (*Id*. ¶¶ 29, 54.) Plaintiff alleges that she was arrested, jailed, prosecuted based on Defendant Siegel's and Defendant Skecher's false accusations, and eventually declared not guilty and acquitted of all charges. (*Id*. ¶¶ 33–34.) She also alleges that the criminal action terminated in her favor and she seeks damages, including compensatory and punitive damages. (*Id*. ¶¶ 54–55.) Thus, Plaintiff has pleaded all the elements of a malicious prosecution claim under Georgia law.

Defendants argue Defendant Siegel did not lead the investigation against Plaintiff and that only Mr. Yount reported the matter to the authorities. (Dkt. 16 at 14–16.) Defendants also cite a police report to argue that the police did not credit the allegedly false information Defendant Siegel told Mr. Yount and took "into account Plaintiff's own version of events." (*Id*. at 16 (quoting Dkt. 16-1 at 4).) Despite these arguments, it is still possible that a state court could find Plaintiff's original complaint states a claim for malicious prosecution against

Defendant Siegel. And although the Dunwoody Police Department officer examined the records from Plaintiff's purchases, his report does not show that he spoke to Plaintiff or otherwise learned of her version of events. (Dkt. 16-1 at 4–5.)

Defendants also argue that law enforcement exercised its independent judgment by declining to prosecute Plaintiff for certain conduct Mr. Yount reported. Plaintiff's allegations in the complaint and the police report contradict this argument.

Plaintiff alleges that Mr. Yount told the Dunwoody police that she had committed many acts of theft by deception. (Dkt. 1-1 ¶ 27.) She alleges that Defendant Siegel assisted and supported Mr. Yount in making that report. (*Id.* ¶ 29.) According to the police officer's report, Mr. Yount said that Plaintiff "had committed numerous acts of theft by deception which resulted in a loss." (Dkt. 16-1 at 4.) The officer concluded that "[b]ased on these deceptive practices *and Mr. Yount's expressed interest in pursuing this case*, [he] applied for a warrant for Ms. Washington for theft by deception." (*Id.* at 5 (emphasis added).) "[A] defendant may successfully defend against a claim of malicious prosecution when the arresting officer provides an uncontroverted

affidavit that the decision to arrest plaintiff was made solely by him in the exercise of his professional judgment and independently of any exhortations by the defendants." *Barnette*, 670 S.E.2d at 221 (quotation marks and citations omitted). But that is not the case here. The officer admits that he acted — in part — on Defendant Siegel's exhortations.

Defendants also argue that Defendant Siegel did not act with malice. (Dkt. 16 at 21–22.) In the context of malicious prosecution, "[m]alice consists in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured." *Vojnovic v. Brants*, 612 S.E.2d 621, 624–25 (Ga. Ct. App. 2005) (quoting *Ashmore v. Foster*, 561 S.E.2d 228, 231 (Ga. Ct. App. 2002)). "[M]alice may be inferred in the absence of probable cause." *Id.* Courts may find "no probable cause exists if a defendant knew that the facts stated to the law enforcement official were false or if he failed to make a fair, full, and complete statement of the facts as they existed, or if he concealed facts." *Reid*, 812 S.E.2d at 588 (quoting *McKissick*, 684 S.E.2d at 28).

In her original complaint, Plaintiff asserts that Defendants (which include Defendant Siegel) instigated a criminal action against her

without probable cause and with malice. (Dkt. 1-1 ¶ 52.) She asserts that "Defendants knew that the facts stated to the law enforcement official were false and failed to make a fair, full, and complete statement of the facts as they existed." (*Id*. ¶ 54.) She alleges that "Defendants concealed facts and destroyed exculpatory documents." (*Id*.) Plaintiff alleges that Defendant Siegel knew she was buying items online and returning them at her home store for an employee discount, but he never said the practice was against company policy. (*Id*. ¶ 20–21.) She also alleges that Defendant Siegel supported and assisted Mr. Yount in reporting her actions to the Dunwoody Police Department. (*Id*. ¶ 29.) Under these circumstances, it is possible that a state court could find that the complaint alleges Defendant Siegel acted maliciously and without probable cause. *Cf. Vojnovic*, 612 S.E.2d at 625 (finding jury may find malice and lack of probable cause where plaintiff presented evidence that defendant authorized plaintiff's actions then reported plaintiff to the police).

A Georgia state court would likely conclude that Plaintiff's allegations of malicious prosecution against Defendant Siegel satisfy Georgia's notice-pleading standard. *See Stillwell*, 663 F.3d at 1334–35.

The sufficiency of these allegations prevent Defendants from succeeding on their fraudulent joinder claim. *C.f. Triggs,* 154 F.3d at 1287 (explaining fraudulent joinder arises when "there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant").

## C.    Intentional infliction of emotional distress

Plaintiff also sued Defendant Siegel for intentional infliction of emotional distress. (Dkt. 1-1 ¶¶ 57–58.) Defendants argue that this claim fails because the underlying slander and malicious prosecution claims lack merit. (Dkt. 16 at 2.)

"Four elements must be present to support a claim of intentional infliction of emotional distress: (1) [t]he conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." *Reid*, 812 S.E.2d at 589 (quoting *Sevcech v. Ingles Mkts.*, 474 S.E.2d 4, 7 (Ga. Ct. App. 1996)) (alterations in original). "When evaluating whether the objected-to conduct can reasonably be characterized as outrageous or egregious, a jury may consider evidence of a defendant's malicious purpose or wanton

disregard of a plaintiff's rights." *Id.* (quoting *K-Mart Corp. v. Lovett*, 525 S.E.2d 751, 755 (Ga. Ct. App. 1999), *abrogated on other grounds by Golden Peanut Co. v. Bass*, 547 S.E.2d 637, 646 (Ga. Ct. App. 2001)). "To qualify as sufficiently 'extreme and outrageous' the conduct at issue 'must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Standard v. Falstad*, 779 S.E.2d 682, 686 (Ga. Ct. App. 2015) (quoting *Kaiser v. Tara Ford, Inc.*, 546 S.E.2d 861, 868 (Ga. Ct. App. 2001)).

Plaintiff alleged in her original complaint that Defendant Siegel's intentional conduct, including false allegations of theft, were extreme and outrageous and that it caused her to suffer severe emotional distress. (Dkt. 1-1 ¶ 57.) Plaintiff, thus, properly pleaded the elements of her claim. *Cf. Walker v. Walker*, 668 S.E.2d 330, 335 (Ga. Ct. App. 2008) (finding plaintiff properly pleaded elements of claim where complaint asserted defendants' intentional conduct was extreme and outrageous and caused plaintiff severe emotional distress). Measuring the sufficiency of the basis of Plaintiff's claim at this early stage of the

proceedings — as Defendants ask the Court to do — is premature. *See Love v. Morehouse Coll., Inc.*, 652 S.E.2d 624, 627 (Ga. Ct. App. 2007).

It is, at the very least, possible that a Georgia state court would find Plaintiff's allegations sufficient to state a claim for intentional infliction of emotional distress. *See Stillwell*, 663 F.3d at 1334–35. So this claim also defeats Defendants' assertion of fraudulent joinder.

### D.    New claims in Plaintiff's amended complaint

Plaintiff alleges two new claims in her amended complaint: a claim of conspiracy against Defendant Siegel; and a claim of negligence against both Defendants. (Dkt. 13 ¶¶ 66–72.) Defendant asks the Court to ignore these new allegations as "after-the-fact efforts to defeat removal." (Dkt. 16 at 24.)

The Court agrees that it should not consider the new allegations. Whether the Court has jurisdiction or Plaintiff has fraudulently joined Defendant Siegel depends on the operative complaint at the time of removal. *See Legg*, 428 F.3d at 1322 (citing *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998)). But under 28 U.S.C. § 1447(e), after a party removes a case to federal court and the other party seeks to amend the complaint in a way that destroys jurisdiction, a court may

deny the amendment and maintain jurisdiction, or grant the amendment and remand the case to state court. A court cannot allow an amendment that destroys federal jurisdiction and continue to exercise jurisdiction over the case. *See Ingram v. CSX*, 146 F.3d 858, 862 (11th Cir. 1998).

Because Plaintiff sufficiently pleaded her claims of malicious prosecution and intentional infliction of emotional distress against Defendant Siegel in her original complaint, the Court lacks subject matter jurisdiction over this matter and will not address the parties' arguments about Plaintiff's newly asserted claims in her amended complaint.

## IV. Conclusion

The Court **GRANTS** Plaintiff's Motion to Remand to State Court (Dkt. 12) and **REMANDS** this action to the State Court of DeKalb County, Georgia.

**SO ORDERED** this 24th day of July, 2019.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE